**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| BERNICE SANDOVAL; DAVID JUNIOR LEBRÓN<br><br>    Plaintiffs<br><br>    vs.<br><br>MENNONITE GENERAL HOSPITAL, INC., or alternatively, RICHARD ROE CORPORATION d/b/a MENNONITE GENERAL HOSPITAL; HOSPITAL ORIENTE, INC., or alternatively, JOHN DOE CORPORATION d/b/a HOSPITAL ORIENTE; DR. ABEL VALLE MEDINA and his wife JANE DOE, each of them personally and in representation of their conjugal partnership; DR. RAFAEL A. MOSQUERA and his wife MARY DOE, each of them personally and in representation of their conjugal partnership; JOHN DOES 1, 2 and 3; CORPORATIONS A, B AND C; UNKNOWN INSURANCE COMPANIES A through H<br><br>    Defendants | CIVIL NO. 22-<br><br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Plaintiffs, through their undersigned counsel, very respectfully state and pray as follows:

**Jurisdiction and Venue**

1.    The events or omissions giving rise to the claims set forth in this action all occurred within the district of Puerto Rico in the Commonwealth of Puerto Rico.

2.     Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code.  Venue is appropriate in this judicial district pursuant to section 1391(b) of Title 28, United States Code.

3.     The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

### Parties

4.     Bernice Sandoval ("Mrs. Sandoval"), daughter of Mrs. Yolanda Dávila Rosa (deceased), is a citizen and resident of the state of New York.

5.     David Junior Lebrón ("Mr. Lebrón"), son of Mrs. Yolanda Dávila Rosa (deceased) is a citizen and resident of the state of California.

6.     Defendant Mennonite General Hospital, Inc., or alternatively, Richard Roe Corporation d/b/a Mennonite General Hospital (hereinafter "Mennonite Hospital") is an entity organized under the laws of the Commonwealth of Puerto Rico which has its principal place of business in Puerto Rico.  Mennonite Hospital is the owner or operator of a hospital or health facility of the same name located in Humacao, Puerto Rico. Effective on February 28, 2020 Mennonite Hospital acquired certain assets from Hospital Oriente, possibly including the claim herein described, and is therefore responsible for the damages caused by Mennonite Hospital and/or its personnel, including but not limited to the damages caused to plaintiffs and the decedent, by codefendant Dr. Valle and/or the medical and nursing personnel.

7.     Defendant Hospital Oriente, Inc., or, alternatively, John Doe Corporation d/b/a Hospital Oriente (hereinafter "Hospital Oriente") is an entity organized under the laws of the Commonwealth of Puerto Rico which has its principal place of business in

Puerto Rico. Hospital Oriente is the owner and operator of a hospital or health facility of the same name, located in Humacao, Puerto Rico.

8.      Defendant Doctor Abel Valle Medina ("Dr. Valle") is a medical doctor, married to codefendant Jane Doe and together with her constituting a conjugal partnership, who provided medical treatment to Mrs. Yolanda Dávila Rosa ("Mrs. Dávila"). Dr. Valle and his wife are domiciled in Puerto Rico where they reside. At all times relevant to this claim Dr. Valle was employed at and/or was a staff physician and/or an employee of Hospital Oriente and/or Mennonite General Hospital, Inc.

9.      Defendant Dr. Rafael A. Mosquera ("Dr. Mosquera") is a medical doctor in charge of patient, married to codefendant Mary Doe and together with her constituting a conjugal partnership, who provided medical treatment to decedent. Dr. Mosquera and his wife are domiciled in Puerto Rico where they reside.

10.     All of the other defendants are also citizens and residents of the Commonwealth of Puerto Rico or states other than the states of New York and California.    John Does 1, 2, and 3 and A, B and C Corporations are persons and/or corporations, whose identities are presently unknown, which by their negligent acts or omissions caused or contributed to the damages claimed herein.

11.     Unknown Insurance Companies A through H, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

## Factual Allegations

12.     Mrs. Yolanda Dávila Rosa was a 67 year old woman (5'3" / 214 lbs.  BM 38) who on May 7, 2019 presented to the Emergency Department of Hospital Oriente, complaining of abdominal pain and vomiting.  Mrs. Dávila's husband accompanied her. In the Emergency Department Mrs. Dávila was evaluated by Dr. Abel Valle Medina. Mrs. Dávila's past surgical history included abdominal surgery (exploratory laparotomy) and prior cesarean section.  Dr. Valle's note in the electronic medical record contains no information concerning Mrs. Dávila's past medical history.

13.     On physical exam of Mrs. Dávila's abdomen Dr. Valle noted tenderness in the epigastric region. On laboratory testing the CBC (Complete Blood Count was notable for:

WBC (white blood cell count) = 16,800       (Normal range = 4,800-10,800)
Neutrophils percentage = 95%                      (Normal range = 42%-75%)
Neutrophils absolute number = 15,920
Lymphocytes absolute number = 220

14.     An ultrasound of the abdomen ordered by Dr. Valle was read by the radiologist and showed that the texture of the liver was normal with no evidence of intrahepatic bile duct dilatation.

15.     Radiologist José R. Nassar Yumet, MD's reading on May 7, 2019 of the CT of the abdomen contained the following comment:    "Marked nodularity and heterogeneity of the anterior aspect of the right lobe of the liver as well as the left lobe. Post IV contrast images or MRI of the abdomen without and with intravenous contrast is recommended."

16.     Dr. Valle diagnosed Mrs. Dávila with acute gastroenteritis and dehydration. He discharged her home at 8:45 PM to follow up with their primary care

4

physician. In the discharge instructions there were no recommendations for Mrs. Dávila to obtain a CT scan of the abdomen with IV contrast or an MRI of the abdomen with and without I.V. contrast, as had been recommended by the radiologist.

17.    On June 6, 2019 Mrs. Dávila visited Dr. Mosquera at his office. The reason for this visit was listed as a follow-up appointment after being seen in the Emergency Department on May 7, 2019 for complaints of reflux, heartburn, epigastric pain, fullness and bloating. Dr. Mosquera documented that during that Emergency Department visit on May 7 an abdominal ultrasound was read as being normal and the CT of the abdomen was abnormal with recommendation that an MRI be obtained.

18.    Despite the radiologist recommendation that either a CT with IV contrast or an MRI with and without contrast be obtained, Dr. Mosquera ordered neither of these. Instead, Dr. Mosquera scheduled an upper endoscopy (esophagogastroduodenoscopy = EGD) which he performed on June 14, 2019.

19.    In his July 11, 2019 note Dr. Mosquera's documents the EGD biopsy results. Dr. Mosquera again documents the abnormal findings from the May 7, 2019 CT of the abdomen (without IV contrast) which showed marked nodularity and heterogeneity of the liver.

20.    On September 11, 2019 Dr. Mosquera evaluates Mrs. Dávila in his office and documents the results of an ultrasound of the abdomen which was performed earlier that day. The radiology report described a liver of normal size, shape and texture. Status-post cholecystectomy. Dr. Mosquera's diagnosis for this visit was "gastroesophageal reflux disease without esophagitis and acute gastritis without

5

bleeding." Dr. Mosquera did not order either a CT of the abdomen with IV contrast or an MRI of the abdomen.

21.    On September 25, 2019 Dr. Mosquera documented that the reason for this visit was a follow-up for gastroesophageal reflux, irritable bowel and abnormalities found on CT of the abdomen.    Dr. Mosquera again documents findings from the ultrasound of the abdomen from September 11, 2019 and states that a colonoscopy was performed by another physician in 2018 and that polyps were removed at that time. Dr. Mosquera's diagnosis for this visit was gastroesophageal reflux disease without esophagitis and acute gastritis without bleeding.  The discharge instructions given to Mrs. Dávila were for esophagitis as well as instructions for acute gastritis without bleeding. He recommended that Mrs. Dávila follow-up with him in 6 weeks.

22.    On October 19, 2020 Mrs. Dávila went to the Emergency Department of Ryder Hospital by ambulance with a complaint of right sided abdominal pain that has been present for one week.  Her vital signs were respiratory rate 52, pulse 138.  Initial blood pressure was too low to measure.

23.    Mrs. Dávila was noted to be in septic shock and hypovolemic shock with hypoglycemia (low blood glucose), hypotension, renal failure and severe lactic acidosis with a lactic acid level of 13 (Normal = less than 2).  She was treated with IV fluids, antibiotics, and dextrose.  Blood cultures were obtained and final results were positive for two different bacterias:  E coli and Proteus mirabalis.  A CT of chest, abdomen and pelvis showed a large mass in the left lobe of the liver measuring over 10 cm and multiple pulmonary nodules with enlarged lymph nodes concerning for malignancy. At

8:39 PM Mrs. Dávila was transferred by ambulance from Hospital Ryder to Auxilio Mutuo Hospital.

24.    Mrs. Dávila arrives on October 19, 2020 at 9:32 PM in the Emergency Department of Auxilio Mutuo Hospital.  During her admission at Auxilio Mutuo Hospital Mrs. Dávila was treated for sepsis and bacteremia.  An abdominal ultrasound showed a hepatic mass with dilated common bile duct and thrombosis of the left portal vein.  Mrs. Dávila was diagnosed with advanced stage malignancy (cancer) with a very poor prognosis.  Mrs. Dávila's family changed her code status to DNR (Do not resuscitate).

25.    Mrs. Dávila died on October 21, 2020 at 11:09 PM from advanced stage metastatic cancer complicated by sepsis and bacteremia.

26.    On May 7, 2019, Mrs. Dávila arrives at Hospital Oriente Emergency Department complaining of abdominal pain.  Mrs. Dávila's home medicine list included Plaquenil (Hydroxychloroquine) and sulfasalazine.  These medicines suggest that Mrs. Dávila was being treated for an underlying rheumatologic disease or gastrointestinal disease yet Dr. Valle never enquired about Mrs. Dávila's past medical history.

27.    Medical records from Mrs. Dávila's cardiologist Dr. Dennis Ruiz list her medical problems that included hypertension, hypercholesterolemia, hypothyroidism, morbid obesity, atherosclerosis of the aorta and super ventricular tachycardia. Laboratory testing on May 7, 2019 showed a significantly elevated white blood cell count with increased percentage of neutrophils and increased absolute number of neutrophils and a low number of lymphocytes.

28.    Emergency Medicine physician Dr. Valle ordered a CT of the abdomen and pelvis on May 7, 2019.  However, this CT scan was obtained without the

administration of intravenous (IV) contrast. Administration of IV contrast allows the radiologist to have much better visualization of the liver and certain other parts of the anatomy. Mrs. Dávila did receive oral contrast which assists with visualizing of the liver and certain other parts of the anatomy. Mrs. Dávila did receive oral contrast which assists with visualizing the "hollow" organs of the abdomen such as the stomach and the lumen of the intestine but oral contrast does not help to visualize the solid organs such as the liver, spleen or kidney.

29.    On this CT scan radiologist Dr. Nassar Yumet found some abnormalities in the liver and hence recommend that an either a CT scan with contrast be obtained or an MRI with and without contrast be obtained.

30.    Dr. Valle did not order either a CT scan with IV contrast or an MRI. Instead, Dr. Valle discharged Mrs. Dávila from the emergency department with a recommendation for her to follow up with a gastroenterologist for outpatient evaluation. In his discharge instructions Dr. Valle did not mention the radiologist recommendation to obtain either a CT of the abdomen with IV contrast or an MRI.

31.    Mr. Dávila was seen by Dr. Mosquera on several occasions (June 6, 2019/June 14, 2019/July 11, 2019/Sept. 25, 2019). Dr. Mosquera documented in his notes that he was aware of the abnormal findings on the CT scan from May 7, 2019, and he was aware of the radiologist's recommendation to obtain a CT scan with contrast or an MRI. However, despite this knowledge Dr. Mosquera never ordered either of these tests.

32.    On October 19, 2020, 17.5 months after the emergency department visit of May 7, 2019, Mrs. Dávila returned to Hospital Ryder in critical condition suffering from

abdominal pain, hypotension, hypoglycemia, septic shock due to bacteremia with two different species of bacteria (E. coli and Proeteus mirabalis) and was found to have probable end stage cancer complicated by sepsis and bacteremia.

33.    Mrs. Dávila was transferred from Hospital Ryder to Auxilio Mutuo Hospital where she died on October 21, 2020 from cancer complicated by sepsis and bacteremia.

34.    Emergency medicine physician Dr. Valle, Hospital Oriente and/or Mennonite Hospital breached the standard of care on May 7, 2019 in the following ways:   Not obtaining a past medical history; not initially obtaining a CT scan of the abdomen and pelvis with IV contrast; not obtaining a CT scan of the abdomen and pelvis with IV contrast after Radiologist Dr. Nassar had recommended  that this be obtained; not informing Mrs. Dávila and her family of the abnormal findings of the CT scan of the abdomen and pelvis obtained on May 7, 2019; discharging Mrs. Dávila to home without recommending that she obtain either a CT scan of the abdomen and pelvis with contrast or an MRI of the abdomen and pelvis with and without contrast; not informing Mrs. Dávila's primary care physician of the recommendation to obtain either a CT scan of the abdomen and pelvis with contrast or an MRI of the abdomen and pelvis with or without contrast; discharging Mrs. Dávila to home from the emergency department.  At the time Mrs. Dávila was 67 years old and had a medical history that included atherosclerosis, hypertension, thyroid disease, morbid obesity, prior abdominal surgery and during this emergency department visit she was found to have a WBC of 16,800 with 95% neutrophils and an abnormal CT of her abdomen.

35.     Gastroenterologist Dr. Mosquera breached the standard care on June 6, June 14, July 11 and September 25, 2019, by not ordering either a CT scan of the abdomen with IV contrast or an MRI of the abdomen with and without contrast.

36.     Within a reasonable degree of medical probability if a CT scan of the abdomen and pelvis with IV contrast had been obtained on May 7, 2019, (or any day after May 7, 2019) evidence of cancer would have been found and this would have led to further procedures to diagnose the type of cancer as well as the stage and grade of cancer.     Therapeutic decisions would then have been made based upon this information.

37.     Because of these breaches of the standard of care as described above this cancer grew and spread between May 7, 2019, and the time of Mrs. Dávila's death 17.5 months later on October 21, 2020.

38.     Within a reasonable degree of medical probability had this cancer been diagnosed at some point between May 2019 and October 2021 Mrs. Dávila would have been referred to an oncologist who would have discussed with her treatment options however because of the breaches of the standard of care as described above Mrs. Dávila was never given this opportunity.     Within a reasonable degree of medical probability had Mrs. Dávila been diagnosed with cancer involving her liver at some point between May 7, 2019 and October 2020 Mrs. Dávila would not have died on October 21, 2020.

39.     The breaches of the standard of care as described above by Dr. Valle and Dr. Mosquera were a major contributing factor of Mrs. Dávila's death on October 21, 2020.     Within a reasonable degree of medical probability Mrs. Dávila would not have

died on October 21, 2020 were it not for the breaches of the standard of care as described above.

40.     The premature death of Mrs. Yolanda Dávila Rosa was caused by the defendants' negligent management of her condition.  Defendants' departures from the medical standards of care and failure to act in a prudent, reasonable or responsible manner in the medical care provided to Mrs. Dávila Rosa are in fact what caused the traumatic outcome outlined above.

41.     Plaintiffs have suffered severe emotional damages as a consequence of defendants' negligence and the premature passing of their beloved mother.  The life changing incidents described above have taken a heavy toll on these families.

42.     Plaintiffs' damages are reasonably estimated at a total sum in excess of $10,000,000, including past, present and future pain and suffering.  This sum is broken down by plaintiffs as follows: a) Bernice Sandoval $5,000,000; and (b) David Junior Lebrón $5,000,000.

43.     Prior to her premature death and during her stay at Hospital Oriente, Mrs. Yolanda Dávila Rosa sustained immense physical and emotional pain and suffering due to defendants' negligence, including but not limited to the fear of her impending death. These damages are valued at a sum in excess of $5,000,000 and are inherited by plaintiffs herein.

44.     In addition, under Article 1538 of the Civil Code of Puerto Rico plaintiffs are entitled to punitive damages due to the fact that defendants' negligent acts or omissions herein described were fraudulent or deceitful ("dolosos") and/or done with

grave disregard to the life, security and property of Mrs. Yolanda Dávila Rosa. These damages are valued at a sum equal to the other damages claimed herein.

45.    The statute of limitations was interrupted by the filing of a judicial action in the San Juan Superior Court, Civil No. SJ2021CV06826(804).    This action was voluntarily dismissed, without prejudice.

### COUNT I

### (Medical Malpractice, Vicarious Liability – 31L.P.RA. §5141; 5142)

46.    Paragraphs 1 through 45 of this Complaint are incorporated by reference as if fully set forth herein.

47.    Hospital Oriente and/or Mennonite Hospital and their personnel, including Dr. Valle, Dr. Mosquera and the John Doe Defendants, had a duty to provide medical care to Mrs. Dávila Rosa that complied with the applicable standards of the medical profession.    Notwithstanding, Hospital Oriente and/or Mennonite Hospital and their personnel, including the defendant doctors and the John Doe Defendants, breached that duty as set forth above.

48.    Hospital Oriente and/or Mennonite Hospital are further vicariously liable for the negligent acts and/or omissions incurred by the other defendants herein that they respectively employed, contracted with and/or granted privileges to, and by their respective medical and nursing staff that intervened with Mrs. Dávila Rosa, for their negligence in the selection, monitoring, supervision and granting of privileges to said nurses and doctors.

49.     There is a clear and direct causal link between the negligence of the defendants, Hospital Oriente and/or Mennonite Hospital and their personnel, and the damages sustained by plaintiffs, as set forth above.

## COUNT II

## (Direct Action Against Insurers - 26 L.P.R.A. § 2003)

50.     Paragraphs 1 through 49 of this Complaint are incorporated by reference as if fully set forth herein.

51.     Defendants Insurance Companies A through H have a contractual obligation to compensate those who are damaged by the medical errors and omissions of the defendants, Hospital Oriente and/or Mennonite Hospital and their personnel. As set forth in Count I, above, these defendants committed medical malpractice with respect to Mrs. Dávila Rosa. Moreover, there is a clear and direct causal link between this misconduct and the damages sustained by plaintiffs, as set forth above.

52.     Under 26 L.P.R.A. § 2003, plaintiffs have a right to reclaim directly against the corresponding insurers of the defendants and their personnel.

## PRAYER FOR RELIEF.

**WHEREFORE**, plaintiffs respectfully request that the Court enter final judgment against defendants:

1.     Finding defendants to be in violation of 31 L.P.R.A. §5141, 5142 and 26 L.P.R.A. §2003, and Article 1538 of the new Civil Code of Puerto Rico, as alleged hereinabove.

2.     Finding defendants jointly and severally liable to plaintiffs for the damages sustained by them, plus applicable interest and costs.

3.     Awarding plaintiffs such other and further relief at law or in equity as this

Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury in the

complaint set forth above.

In San Juan, Puerto Rico, this 16th day of March, 2022.

Respectfully submitted,

*s/ David Efron*
**DAVID EFRON**
USDC-PR 125701
**LAW OFFICES DAVID EFRON, PC**
*Attorneys for Plaintiffs*
PO Box 29314
San Juan, PR 00929-0314
Tel. (787) 753-6455
Fax (787) 758-5515
e-mail: efron@davidefronlaw.com