**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

```
BERNICE SANDOVAL, et als.,

      Plaintiffs,

                    v.                    Civil No. 22-1136 (FAB)

HOSPITAL ORIENTE, INC., et al.,

      Defendants.
```

**OPINION AND ORDER**

BESOSA, District Judge.

Defendant Dr. Rafael Mosquera-Fernández ("Mosquera") moves *in limine* to, preclude Dr. Kenneth Stein ("Stein") from testifying as plaintiffs' expert witness at trial. (Docket No. 90.) The Court referred this motion to Magistrate Judge Giselle López-Soler ("López") for a Report and Recommendation ("R&R"). (Docket No. 23.) Magistrate Judge López issued an R&R on February 4, 2025, recommending that this Court grant Dr. Mosquera's motion *in limine*. Sandoval v. Mennonite Gen. Hosp., Inc., Case No. 22-1136, 2025 U.S. Dist. LEXIS 28812, at *2 (D.P.R. Feb. 4, 2025) (López, Mag. J.); Docket No. 125. For the reasons set forth below, the Court **ADOPTS** the R&R. Accordingly, Dr. Mosquera's motion *in limine* is **GRANTED**, and Dr. Stein is precluded from testifying at trial.

## I.  Background

The following facts are set forth in the complaint.  (Docket
No. 1.)  Yolanda Dávila-Rosa ("Dávila") experienced abdominal pain
and vomiting on May 7, 2019, prompting her to seek emergency
medical treatment at Hospital Oriente in Humacao, Puerto Rico.
Id. at p. 4.  Dr. Abel Valle-Medina ("Valle") evaluated Dávila,
observing, inter alia, that her white blood cell count was
"notable."  Id.  Radiologist José Nassar-Yumet analyzed a CT scan
of Dávila's abdomen, noting a "[marked] nodularity and
heterogeneity of the anterior aspect of the right lobe of the liver
as well as the left lobe.  Post IV contrast images or MRI of the
abdomen without and with intravenous contrast is recommended
[hereinafter, "CT scan with contrast or MRI"]."  Id.  Dr. Valle
did not order a CT scan with contrast or an MRI.  Id.  He diagnosed
Dávila with acute gastroenteritis and dehydration, discharging her
that same day with instructions to follow-up with a
gastroenterologist.  Id. at pp. 4-5.

Dávila subsequently visited Dr. Mosquera on June 6, 2019
pursuant to Dr. Valle's instructions for a follow-up appointment.
Id. at p. 5.  Dr. Mosquera is a gastroenterologist.  Id.  He
acknowledged that the radiologist from Hospital Oriente
recommended that Dávila undergo a CT scan with contrast or MRI,
but did not order these procedures.  Id.  He instead performed an

upper endoscopy and ultrasound on Dávila on June 14, 2019 and September 11, 2019, respectively.  Id.  Dr. Mosquera diagnosed her with "gastroesophageal reflux disease without esophagitis and acute gastritis without bleeding."  Id. at pp. 5-6.  On September 25, 2019, Dr. Mosquera recommended that Dávila "follow-up with him in 6 weeks."  Id. at p. 6.  Dávila did not return to Dr. Mosquera's office for a follow-up visit.  Id.

On October 19, 2020, Dávila visited the Ryder Hospital emergency room.  Id.  A CT scan of her chest, abdomen, and pelvis "showed a large mass in the left lobe of the liver measuring over 10 cm and multiple pulmonary nodules with enlarged lymph nodes concerning for malignancy."  Id.  An ambulance then transferred Dávila to Auxilio Mutuo Hospital in San Juan, Puerto Rico, where medical staff treated her for sepsis and bacteremia.  Id. at p 7.  An oncologist diagnosed Dávila with advanced stage cancer.  Id.  She died two days later from this disease.  Id.  Dávila was 67 years old.  Id. at p. 4.

Dávila is survived by her two children, plaintiffs Bernice Sandoval ("Sandoval") and David Junior Lebrón ("Lebrón").  Id. at p. 2.  They commenced this litigation on March 17, 2022, setting forth a single medical malpractice claim pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code.  Id. at p. 12; see P.R.

Laws Ann. tit. 31, §§ 5141-42.[1]  The Clerk of the Court entered

default judgment against Hospital Oriente on June 2, 2022.  (Docket

No. 19.)  Mennonite General Hospital subsequently prevailed on its

motion for summary judgment.  (Docket Nos. 67 and 73.)

Consequently, the Court dismissed the medical malpractice claim

against Mennonite General Hospital on February 21, 2024.  (Docket

No. 74.)  Dr. Valle and Dr. Mosquera are the only remaining

defendants in this litigation, other than Hospital Oriente, which

is in default.  Dr. Mosquera purportedly "breached the [applicable]

standard of care . . . by not ordering either a CT scan of the

abdomen with IV contrast or an MRI of the abdomen with or without

contrast."  (Docket No. 98 at p. 9.)

     Sandoval and Lebrón retained Dr. Stein as an expert witness.

(Docket No. 100, Ex. 1.)[2]  On May 3, 2024, Dr. Mosquera moved to

preclude Dr. Stein from adducing expert testimony at trial.

---

[1] The Puerto Rico legislature amended the 1930 Civil Code on November 28, 2020. See Johnson v. United States, Case No. 22-1088, 2022 U.S. Dist. LEXIS 41793, at *7 n.7 (D.P.R. Mar. 9, 2022) (Delgado-Hernández, J.).  Pursuant to Article 1816 of the amended code, "tort liability is determined by the law in effect at the time of the act or omission."  Vázquez-Torres v. Ayala-Marrero, Case No. 21-1148, 2024 U.S. Dist. LEXIS 43810, at *13 (D.P.R. Mar. 1, 2024) (Morgan, Mag. J.).  Accordingly, the 1930 Civil Code governs the disposition of this case. See Vázquez-Torres, 2024 U.S. Dist. LEXIS 43810, at *13 (applying the "Puerto Rico Civil Code in force at the time of accident" in a tort action); Johnson, 2022 U.S. Dist. LEXIS 41793, at *7 (applying the 1930 Civil Code in a 2022 legal malpractice action because "the [relevant] events took place before the new [law] became effective on November 28, 2020").

[2] Dr. Stein is board certified in internal and emergency medicine.  (Docket No. 100, Ex. 1.)  The defendants do challenge Dr. Stein's qualifications.  See Docket No. 90, Ex. 5 (Curriculum Vitae of Kenneth A. Stein, M.D.).

(Docket No. 90.)  Sandoval and Lebrón responded.  (Docket No. 100.)
Magistrate Judge López issued an R&R on February 4, 2024, holding
that "Dr. Stein's opinion would not assist the jury in
understanding why the standard of care identified by him required
Dr. Mosquera to order Mrs. Dávila to obtain a CT scan with IV
contrast or a MRI." <u>Sandoval</u>, 2025 U.S. Dist. LEXIS 28812, *19-20.
Sandoval and Lebrón filed an objection to the R&R on February 28,
2025.  (Docket No. 127.)  Dr. Mosquera responded.  (Docket
No. 130.).

## II.  Report And Recommendation Standard of Review

A district court may refer a pending motion to a magistrate
judge for a report and recommendation (R&R).  <u>See</u> 28 U.S.C.
§ 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b).  Any party
adversely affected by the R&R may file written objections within
fourteen days of being served with the magistrate judge's report.
Loc. Rule 72(d); <u>see</u> 28 U.S.C. § 636(b)(1).  A party that files a
timely objection is entitled to a <i>de novo</i> determination of "those
portions of the report or specified proposed findings or
recommendations to which specific objection is made."  <u>Ramos-
Echevarría v. Pichis, Inc.</u>, 698 F. Supp. 2d 262, 264 (D.P.R. 2010);
<u>Sylva v. Culebra Dive Shop</u>, 389 F. Supp. 2d 189, 191-92 (D.P.R.
2005) (citing <u>United States v. Raddatz</u>, 447 U.S. 667, 673 (1980)).

Failure to comply with this rule precludes further review.

See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Borden v. Sec'y of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987).  In conducting its review, a court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(a)(b)(1); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp.2d 144, 146 (D.P.R. 2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object.  See Hernández-Mejías v. General Elec., 428 F.S upp.2d 4, 6 (D.P.R. 2005) (citing Lacedra v. Donald W. Wyatt Detention Facility, 334 F. Supp. 2d 114, 125-126 (D.R.I. 2004)).

## III. Article 1802 and Federal Rule of Evidence 702

Because subject matter jurisdiction in this action is based on diversity of citizenship, the substantive law of Puerto Rico is applicable.  Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 21 (1st Cir. 2008).  Medical malpractice liability in Puerto Rico is fault based.  Rodríguez-Díaz v. Seguros Triple-S, 636 F.3d 20, 23 (1st Cir. 2011).  Pursuant to Article 1802, "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage done."  P.R. Laws Ann. tit. 31, § 5141.  "Within this rubric, three elements coalesce to make up a prima facie case for medical malpractice (a species

of professional negligence)." <u>Martínez-Serrano v. Quality Health</u>
<u>Servs. of P.R., Inc.</u>, 568 F.3d 278, 285 (1st Cir. 2009).  To
prevail, Sandoval and Lebrón must establish:  "'(1) the duty owed
(*i.e.*, the minimum standard of professional knowledge and skill
required in the relevant circumstances), (2) an act or omission
transgressing that duty, and (3) a sufficient causal nexus between
the breach and the claimed harm.'"  <u>Torres-Lazarini v. United</u>
<u>States</u>, 523 F.3d 69, 72 (1st Cir. 2008) (citation omitted).

Medical physicians in Puerto Rico are subject to a national
standard of care.  <u>Rojas-Ithier v. Sociedad Española de Auxilio</u>
<u>Mutuo y Beneficiencia de Puerto Rico</u>, 394 F.3d 40, 43 (1st Cir.
2005).  Puerto Rico courts define this standard as "[that level of
care] which, recognizing the modern means of communication and
education, . . . meets the professional requirements generally
acknowledged by the medical profession." <u>Marcano Rivera v. Turabo</u>
<u>Med. Ctr. P'ship</u>, 415 F.3d 162, 167-68 (1st Cir. 2005) (quoting
<u>Oliveros v. Abreu</u>, 101 P.R. Dec. 209, 266 (1973)).  Health care
providers are "presumed to have exercised reasonable care in the
discharge of [their] functions.'" <u>López-Rivera v. Hosp. Auxilio</u>
<u>Mutuo, Inc.</u>, 290 F. Supp. 3d 137, 142 (D.P.R. 2017) (quoting <u>López-</u>
<u>Rivera</u>, 247 F. Supp. 3d 185, 186 (D.P.R. 2017) (Delgado-Colón,
J.)) (Gelpí, J.).  Accordingly, Sandoval and Lebrón shoulder the
burden of refuting the presumption of reasonable care.

Civil No. 22-1136 (FAB)                                                8

Generally, medical malpractice claims require expert testimony to establish the applicable standard of care. Rolón-Alvarado v. Municipality of San Juan, 1 F.3d 74, 78 (1st Cir. 1993) ("Because medical knowledge and training are critical to demonstrating the parameters of a physician's duty, the minimum standard of acceptable care . . . must ordinarily be established by expert testimony."); Borges v. Serrano-Isern, 605 F.3d 1, 7 (1st Cir. 2010) ("A plaintiff has the obligation to refute this presumption by adducing [expert] evidence sufficient to show both the minimum standard of care required and the physician's failure to achieve it.").

Federal Rule of Evidence 702 ("Rule 702") provides that an expert may testify in the form of an opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence of to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (holding that Daubert applies to technical and other specialized experts). The Court "must perform a gatekeeping

function and decide whether the proposed testimony, including the methodology employed by the witness in arriving at the proffered opinion, rests on a reliable foundation and is relevant to the facts of the case." Cummings v. Standard Register Co., 265 F.3d 56, 64 (1st Cir. 2001) (internal citations omitted).

The admissibility of expert opinion is contingent "solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. Courts may, however, "conclude that there is simply too great an analytical gap between the data and opinion proffered." Martínez v. United States, 33 F.4th 20, 24 (1st Cir. 2022) (quoting GE v. Joiner, 522 U.S. 136, 146 (1997) ("[Nothing] in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")). "There is an important difference between what is unreliable support and what the trier of fact may conclude is insufficient support of an expert's conclusion." Milward v. Acuity Specialty Prods. Group, 639 F.3d 11, 22 (1st Cir. 2011) (emphasis in original). The weight and credibility of an expert opinion are determined by the trier of fact. Id. (citation omitted).

Expert testimony in medical malpractice actions "must prove that a standard of care is nationally used, rather than simply explaining a standard as based on their experience." Clemente-

Civil No. 22-1136 (FAB)                                          10

Vizcarrodo v. United States, Case No. 17-1141, 2020 U.S Dist. LEXIS

26494, at *9 (D.P.R. Feb. 14, 2020) (Arias-Marxuach. J.) (citation

omitted).  The national standard of care may derive from references

to a medical publication, "discussion of the described course of

treatment with practitioners outside the District . . . at seminars

or conventions, or through the presentation of relevant data."

Id. (citation and internal quotation omitted); see López-

Concepción v. Caribe Physicians Plaza Corp., Case No. 21-1360,

2024 U.S. Dist. LEXIS 141306, at *22 (D.P.R. Aug. 7, 2024)

(granting the defendant's motion in limine to exclude expert

opinion in part because "[his] report [did] not identify a national

standard of care, nor does it state how Dr. Ortiz adhered to that

standard of care") (Ramos-Vega, Mag. J.); López-Ramírez v. Toledo-

González, 32 F.4th 87, 96 (1st Cir. 2022) (affirming the dismissal

of a medical malpractice cause of action because the plaintiff's

expert set forth "conclusory statements [in his report alleging

that the defendant] deviated from the standard of care – statements

that do not attempt to describe the principles or methods by which

[the expert] reached that opinion").

     If an expert "[relies] solely or primarily on experience,

then the witness must explain how that experience leads to the

conclusion reached, why that experience is a sufficient basis for

the opinion, and how that experience is reliably applied to the

facts." Fed. R. Evid. 702 advisory committee's notes.  Ultimately,

"[failure] to provide a testimony or a report detailing the basis

for the expert's opinion in a comprehensive scientific manner can

cause the expert witness and his report to be eliminated from

trial." Soto-González v. DRS' Ctr. Hosp., Case No. 20-0431, 2024

U.S. Dist. LEXIS 34463, at *13 (D.P.R. Feb, 23, 2024) (citing Justo

Arenas & Carol M. Romey, Professional Judgment Standard and Losing

Games for Psychology, Experts and the Courts, 68 REV. JUR. U.P.R.

159, 180 (1999)) (Méndez-Míro, J.).

**IV.  Discussion**

Dr. Mosquera contends that Dr. Stein "failed to articulate

the basis for his conclusion that [the defendants] breached a

national standard of care." (Docket No. 90 at p. 28.)  Dr. Stein's

expert opinion is set forth below, including the contents of his

report and deposition testimony.

**A.   Dr. Stein's "Report Concerning Care Provided to Yolanda Dávila-Rosa"**

Federal Rule of Civil Procedure 26 provides that

"[plaintiffs] and defendants alike must identify their expert

witnesses and produce their expert's reports by court-approved

deadlines." Lawes v. CSA Architects & Eng'rs LLP, 963 F.3d 72, 90

(1st Cir. 2020) (citing Fed. R. Civ. P. 26).  Dr. Stein completed

his "Report Concerning Care Provided to Yolanda Dávila-Rosa"

(hereinafter "report") on June 9, 2022.  (Docket No. 90, Ex. 2.)
The report is based solely on his review of Dávila's medical
records.  Id. at p. 1.  Dr. Stein provides a detailed timeline of
pertinent events, including Dávila's May 7, 2019 visit to the
Hospital Oriente emergency room and follow-up appointments with
Dr. Mosquera.  Id. at pp. 1-4.  He then reiterates this timeline
in the "discussion" section, noting that Dr. Mosquera "never
ordered" a CT scan with contrast or an MRI, something Dr. Stein
claims Dr. Mosquera should have done.  Id. at p. 4.

       Dr. Stein cites no study, article, or other publication
in support of his expert opinion.  The report does not identify
the applicable standard of care.  Instead, Dr. Stein suggests that
the defendants breached the standard of care in the following ways:

**Dr. Medina**

- Not obtaining a past medical history.
- Not initially obtaining a CT scan of the abdomen
  and pelvis with IV contrast.
- Not obtaining a CT scan of the abdomen and pelvis
  with IV contrast after Radiologist Dr. Nassar had
  recommended that this be obtained.
- Not informing Ms. Dávila and her family of the
  abnormal findings of the CT scan of the abdomen and
  pelvis obtained on May 7, 2019.
- Discharging Ms. Dávila to home without recommending
  that she obtain either a CT scan of the abdomen and
  pelvis with contrast or an MRI of the abdomen and
  pelvis with and without contrast.
- Not informing Ms. Dávila's primary care physician
  of the recommendation to obtain either a CT scan of

the abdomen and pelvis with contrast or an MRI of
the abdomen and pelvis with and without contrast.

- Discharging Ms. Dávila home from the emergency
  department.

**Dr. Mosquera**

- Gastroenterologist Dr. Mosquera breached the
  standard of care on June 6, June 14, July 11, and
  September 25, 2019 by . . . [not] ordering either
  a CT scan of the abdomen with IV contrast or an MRI
  of the abdomen with and without contrast.

**Oriente Hospital**

- The staff at Oriente Hospital breached the standard
  of care on May 7, 2019 by . . . [not] documenting
  Ms. Dávila's past medical history in the medical
  record.

Id. at p. 5. According to Dr. Stein, if a "CT scan of the abdomen

and pelvis (with IV contrast) or an MRI of the abdomen and pelvis

with and without contrast had been obtained . . . liver cancer

would have been found and this would have led Ms. Dávila being

admitted to the hospital for further diagnostic evaluation and

treatment." Id. The defendants' failure to order these procedures

caused "the liver cancer to grow and spread," however, resulting

in Ms. Dávila's death. Id.

B. **The July 17, 2023 Deposition**

The deposition of Dr. Stein occurred on July 17, 2023.

(Docket No. 100, Ex. 1.) He testified in pertinent part that

"[once] Dr. Valle was done and completed his care of the patient

. . . the further obligation of obtaining the CT and the MRI [fell]

upon the GI doctor, Dr. Mosquera." Id. at pp. 49-50. The radiologist and Dr. Mosquera both "[had] their own separate responsibility to obtain the study. Period." Id. at p. 51. Dr. Stein stated that there "are multiple organizations that give recommendations for treatment of multiple conditions," such as the Association of Gastroenterology. Id. at p. 59. He did not, however, specify which recommendations articulate the relevant standard of care in this case.

### C.  Dr. Stein's Expert Opinion is Not Reliable

This Court must "ensure that scientific testimony is not only relevant, but reliable." Kuhmo Tire Co. Carmichael, 526 U.S. 137, 147 (1999). "[Testing], peer review, error rates, and 'acceptability' in the relevant scientific community" are material to the reliability inquiry. Id. (citing Daubert, 509 U.S. at 593-94). Dr. Mosquera asserts that Dr. Stein's report and deposition testimony lack "scientific, technical or other specialized knowledge to support any basis for his opinion." (Docket No. 90 at p. 20.)

"Absent from Dr. Stein's expert report and from this deposition testimony is a description of the methodology used by him, the scientific data on which he relies to determine the standard of care that applied to a gastroenterologist's treatment of Ms. Dávila." Sandoval, 2024 U.S. Dist. LEXIS 28812, at *12.

The Court concurs with the magistrate judge that Dr. Stein "[failed] to cite to any medical data, publications, literature, protocols, or professional standards, or even to the generalize practice of gastroenterology to justify his conclusion as the applicable standard of care." Id. Essentially, Dr. Stein's excerpt opinion is based on his personal disagreement with the medical treatment provided by the defendants. See Cruz-Bacardí v. Metro Pavía Hosp., 2019 U.S. Dist. LEXIS 125226, at *3-4 (D.P.R. June 16, 2019) ("[If] a witness is relying mainly on experience, he must provide more information for the Court to determine the reliability of his testimony.") (Arias-Marxuach, J.); Rolón-Alvarado, 1 F.3d at 78 (holding that opinion testimony cannot be based on the expert's disagreement with the medical care that was provided).

### 1.    The Plaintiffs' Objection to the Report and Recommendation

Sandoval and Lebrón objected to the R&R, asserting that "neither the Rules of Evidence 702 or 703, nor Rule 26 of the Rules of Civil Procedure require that an explanation of methodology and/or factual basis be included in the expert's report." (Docket No. 127 at p. 14.)  Rule 26 provides, however, that the expert report shall include "a complete statement of all opinions the witness will express and the basis and reasons for them," and the

facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2).

On February 11, 2025, after the R&R was issued, Dr. Stein wrote and signed an affidavit "to show what [his] position would be if a Daubert hearing would be held in this case to determine [his] qualifications and opinions in this case as an expert." (Docket No. Docket No. 127, Ex. 1.) According to Dr. Stein, his affidavit does not "supplement, amend or change in any way [his] previous report, which [he stands] by." Id. Despite this disclaimer, Dr. Stein cites three medical publications to "[help] understand the issues in this case." Id. Essentially, the affidavit attempts to substantiate Dr. Steins' expert opinion regarding the applicable standard of care after the close of discovery, after the R&R was issued, and a month before trial was scheduled.

Federal Rule of Civil Procedure 26 requires a party to disclose all documents that it may use to support its claims or defenses, and all evidence that it may present at trial, unless their purpose is "solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii), 26(a)(3)(A). Failure to properly disclose an expert report triggers Federal Rule of Civil Procedure 37(c)(1): incomplete or late disclosures may preclude a party from using "that information . . . to supply evidence on a motion, at a

hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[I]n the absence of harm to a party, a district court may not invoke the severe exclusionary penalty provided for by Rule 37(c)(1)." Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 58 n.1 (1st Cir. 2010). Furthermore, even when there is harm to a party, "[p]reclusion is not strictly required." Lawes v. CSA Architects & Eng'rs LLP, 963 F.3d 72, 91 (1st Cir. 2020). Instead, "[w]hen noncompliance occurs, the ordering court should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Id. (quoting Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)); see also Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009) ("[D]istrict courts have broad discretion in meting out [discovery] sanctions" and "may choose a less severe sanction.") (citations omitted).

In exercising its broad discretion to determine whether a litigant's failure to timely disclose information required by Rule 26 was substantially justified or harmless, district courts are guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent

to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosure party's explanation for its failure to disclose the evidence.  Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003); Fed. R. Civ. P. 37(c)(1); see also Holsum de P.R., Inc. v. Compass Indus. Grp. LLC, 530 F. Supp. 3d 228, 234 (D.P.R. 2021) (Gelpi, J.) (citing Esposito 590 F.3d at 77 (1st Cir. 2009)).  Generally, Rule 26 "does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony," or in this case, a *post hoc* affidavit. Martínez, 2019 U.S. Dist. LEXIS 125227, at *2-3 (quoting Rodríguez v. Torres, Case No. 11-1602, 2015 U.S Dist. LEXIS 31368, at *18 (D.P.R. Mar. 15, 2013) (M. López, Mag. J.), aff'd sub nom. Santos-Rodríguez v. Seastar Sols., 858 F.3d 695 (1st Cir. 2017) (internal citations omitted).

The Court need not determine whether exclusion of the affidavit is an appropriate remedy, because Dr. Stein still does not state how the supplemental references establish the applicable standard of care.  (Docket No. 127, Ex. 1 at pp. 2-3.) According to Dr. Stein, these references explain how: (1) "obesity decreases the quality of ultrasound images of the liver, (2) "the use of IV Contrast is recommended and improves image quality in CT scans of the abdomen and pelvis," and (3) "of the 3 imaging

modalities, ultrasound (US), CT scan or MRI; MRI can characterize abnormalities better than an ultrasound." Id.  The affidavit suffers from the same defect as his expert report, invoking an *ispe dixit* standard of care that is based only on Dr. Stein's disagreement with the medical treatment provided by Dr. Mosquera and Dr. Valle.  Without citation to any authority or data, he states that "the national standard of care in evaluating Ms. Davila on the dates mentioned above required that Dr. Valle and Dr. Mosquera to order either a CT or the abdomen pelvis with IV contrast or an MRI of the abdomen with and without contrast." Id. at p. 4.

The First Circuit Court of Appeals has held that an "expert witness may sometimes imply a standard of care in their testimony without articulating the 'magic words.'" Cruz-Barcadí, 2019 U.S. Dis. LEXIS 125226, at *12-13 (citing Cortez-Izizarry v. Corporación Insular de Seguros, 111 F.3d 184, 190 (1st Cir. 1997)). Dr. Stein's report and deposition testimony implies a standard of care, however, only by stating what Dr. Mosquera and Dr. Valle should have done.  The standard of care is based only on Dr. Stein's experience as a medical professional. See Hendrix v. Evenflo Co., 609 F.3d 1183, 1201 (11th Cir. 2010) ("Hendrix attempts to sidestep the deficiencies in the medical literature by focusing on Dr. Hoffman's experience and training.  Merely

demonstrating that an expert has experience, however, does not automatically render every opinion and statement by that expert reliable.").

Dr. Valle did not move to join Dr. Mosquera's motion *in limine*. The reasons for excluding expert testimony from Dr. Stein apply, however, with equal force to Dr. Valle. Accordingly, Dr. Stein is precluded from adducing expert testimony at trial regarding the alleged medical malpractice of Dr. Mosquera and Dr. Valle. Accordingly, this case is **DISMISSED with prejudice as to Dr. Mosquera and Dr. Del Valle.**

Because Hospital Oriente is in default, the Court "[takes] all well-plead factual allegation as true, to determine whether it alleges a cause of action." Ramos-Falcón v. Autoridad de Energía Eléctrica, 301 F.3d 1, 2-3 (1st Cir. 2002) (citation omitted.) The Court may hold a hearing, however, "to establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2)(C); Quirindongo Pacheco v. Rolón-Morales, 953 F.2d 15, 16 (1st Cir. 1992). Because Sandoval and Lebrón cannot establish the applicable standard of care as to Hospital Oriente without expert testimony either, the Court need not hold an evidentiary hearing. Accordingly, this case is also **DISMISSED with prejudice** as to Hospital Oriente.

## V. Conclusion

For the reasons set forth above, the Court **ADOPTS** the R&R issued by Magistrate Judge López-Soler on February 4, 2025, recommending that this Court grant Dr. Mosquera's motion *in limine*. Sandoval v. Mennonite Gen. Hosp., Inc., 2025 U.S. Dist. LEXIS 28812, at *2 (D.P.R. Feb. 4, 2025); Docket No. 125. Consequently, Dr. Rafael Mosquera's motion to preclude Dr. Kenneth Stein from testifying as an expert witness at trial is **GRANTED.** (Docket No. 90).

Because plaintiffs Bernice Sandoval and David Junior Lebrón cannot establish the applicable standard of care without expert testimony, this case is **DISMISSED with prejudice** as to Dr. Mosquera, Dr. Valle, and Hospital Oriente.

Judgement shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 14, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE